IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

*In re Malibu Media Copyright Infringement Litigation*

No. C 15-04170 WHA
No. C 15-04289 WHA
No. C 15-04291 WHA
No. C 15-04441 WHA

/

**ORDER RE DEFENDANTS' MOTIONS TO QUASH, MOTIONS TO DISMISS, AND MOTIONS FOR PROTECTIVE ORDERS**

### INTRODUCTION

In these copyright infringement actions, plaintiff has identified each defendant based on his or her Internet Protocol address. Plaintiff has served third-party subpoenas on each defendant's Internet provider in order to receive his or her identifying information for the purpose of effectuating service. Two defendants have now moved to quash the subpoenas, and two others have moved to dismiss. For the reasons stated below, the motions for more definite statements are **GRANTED**. All other motions are **DENIED**.

### STATEMENT

At all relevant times, plaintiff Malibu Media, LLC, operated a subscription-based website that displayed pornographic videos for its subscribers. Malibu Media filed 146 copyright infringement actions in this district. In the interest of judicial economy, all of Malibu Media's actions were assigned to the undersigned judge.

1    The complaints in the above-captioned actions are almost identical. In each action, Malibu Media named an individual defendant identified only by his or her Internet Protocol address, which is an identifier assigned to each Internet subscriber by the subscriber's Internet service provider. The complaint in Case No. 15-4170 identifies the defendant therein by IP address 76.126.239.144 ("Doe 144"). The complaint in Case No. 15-4289 identifies the defendant therein by IP address 76.103.148.240 ("Doe 240"). The complaint in Case No. 15-4291 identifies the defendant therein by IP address 98.210.157.252 ("Doe 252"). Finally, the complaint in Case No. 15-4441 identifies the defendant therein by IP address 76.126.99.126 ("Doe 126").

Each complaint alleges that the defendant used his or her Internet connection to download and distribute a number of Malibu Media's works using a file-sharing protocol called BitTorrent. The complaints all allege that the defendants conducted the alleged infringing activity habitually, rather than on isolated occasions. At oral argument on these motions, counsel for Malibu Media averred that Malibu Media only pursues claims against defendants with eleven or more instances of alleged infringement.

Each complaint describes the mechanics of the BitTorrent protocol. The BitTorrent protocol called for splitting large files, including Malibu Media's videos, into smaller pieces, which Malibu Media calls "bits." Once a file was broken down, users of the protocol could then copy and share the pieces of the larger file with each other, and once a user received all of the pieces of a given file, the user's BitTorrent software, called a "client," reassembled the bits into a complete file. This scheme facilitated an efficient and decentralized distribution scheme as compared to sharing a larger file from a single host site. BitTorrent clients relied on the "cryptographic hash value" of each piece, a unique signifier of a digital file created by the client, in order to verify that each piece had been properly routed. It relied on the cryptographic hash value for each reassembled file to verify that it had been properly assembled.

The complaints then allege that Malibu Media hired IPP International UG, which utilized the BitTorrent protocol to download several of Malibu Media's files from the Internet in order to investigate alleged pirates of Malibu Media's video content. Malibu Media alleges

2

that IPP downloaded pieces from several of its videos from each defendant. Each complaint identifies the videos for which IPP downloaded at least one piece from the subscriber named therein in Exhibit B, and alleges that the subscriber willfully infringed Malibu Media's copyright in the identified videos, by distributing them using the BitTorrent protocol. Exhibit B also identifies the registration number from the Copyright Office for each allegedly infringed video. Malibu Media alleges that Doe 252 and Doe 126 distributed files known as "siterips," which are aggregations of dozens of Malibu Media's videos, rather than just individual videos.

In each action, Malibu Media filed an ex parte motion for leave to serve a third-party subpoena on the defendant's Internet provider, which in all cases has been Comcast Cable Communications, LLC. The requests were granted with the following condition:

> Malibu Media shall not disclose defendant's name, address, telephone number, email, social media username, or any other identifying information, other than defendant's IP address, that it may subsequently learn. All documents including defendant's identifying information, apart from his or her IP address, shall be filed under seal, with all such information redacted on the public docket, unless and until the Court orders otherwise and only after defendant has had an opportunity to challenge the disclosure of any identifying information. Malibu Media explicitly consented to the inclusion of such a protection in its motion.

The order also provided that "Comcast shall not disclose any identifying information about defendant to Malibu Media prior to the return date or prior to the resolution of any motions to quash or modify the subpoena."

The defendants in the above-captioned actions have each filed motions seeking to prevent the disclosure of their identifying information to Malibu Media. Doe 252 and Doe 126 each filed a "Motion to Dismiss and to Quash the Subpoena on Comcast and/or Enter a Protective Order." Those defendants are both represented by Attorney J. Curtis Edmondson. At oral argument, Attorney Edmondson withdrew the motions to quash and for protective orders in light of the protective order already in place in these actions and clarified that the motions to dismiss ultimately sought a more definite statement.

Doe 144 and Doe 240, who are proceeding pro se, each filed a motion to quash the subpoena. Those defendants have provided the Court with their names and addresses, which have been filed on the respective dockets in a manner viewable only to the Court, and all

pleadings and orders have been served at those addresses. This order follows full briefing on each motion, and oral argument from the represented defendants.

## ANALYSIS

This is not Malibu Media's first foray with bulk litigation. In *Malibu Media, LLC v. John Does 1 through 10*, 12-3623, 2012 WL 5382304, at *3–4 (C.D. Cal. June 27, 2012) (citations omitted), Judge Otis Wright, considered whether to allow Malibu Media to subpoena the Internet provider of ten unrelated defendants that it had joined in a single action. He concluded as follows:

> The Court is familiar with lawsuits like this one. These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.
>
> The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement — making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it.

Here, by contrast, Malibu Media is proceeding "the old-fashioned way" — it has filed each of its 146 actions against individual defendants and paid a filing fee in each. The Court is conscious of the potential for abuse in Malibu Media's strategy and has imposed a protective order forbidding the disclosure of any defendant's identifying information to protect defendants from the specter of embarrassment.

Doe 252 and Doe 126 both argue that Malibu Media's complaint should be dismissed, or that Malibu Media should be required to make a more definite statement because its description of the BitTorrent protocol is inaccurate. Those defendants further argue that the subpoena on Comcast should be quashed pending resolution of their motions to dismiss. Doe 144 argues that the subpoena on Comcast should be quashed inasmuch as it imposed an "undue burden." Both

4

Doe 144 and Doe 240 deny their liability, arguing that some third party performed the alleged infringement using their respective Internet connections. This order addresses each argument in turn.

### 1. DESCRIPTION OF THE BITTORRENT PROTOCOL.

Doe 252 and Doe 126 argue that Malibu Media use the term "bit" to refer to the small files distributed by users using the BitTorrent protocol. "Bit" is a term of art in computer networking and communications, which refers to a single unit of binary data. Malibu Media concedes that it does not intend to use that technical definition of the term "bit," but rather intends to use it in the colloquial sense that simply refers to a small subdivision of the file to be transferred using BitTorrent. Doe 252 and Doe 126 seek more definite statements from Malibu Media that use terminology more consistent with the industry. Rule 12(e) provides that a party may move for a more definite statement of a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response."

Doe 252 and Doe 126 contend that industry commentators use the terms "piece" to describe the major subdivisions of a file transmitted via BitTorrent and either "sub-piece" or "block" to refer to subdivisions of "pieces." They have requested judicial notice of three academic papers using those terms, and Malibu Media has opposed those requests on the grounds that the facts therein cannot be accurately and readily determined. *See* FRE 201. Judicial notice of the papers is unnecessary, inasmuch as Malibu Media's use of "bit" is sufficiently vague and ambiguous on its own, in light of the specialized meaning of the term "bit" in the field of computer science (of which judicial notice *is* appropriate). Accordingly, Doe 252's and Doe 156's motions to dismiss or for a more definite statement are **GRANTED**. The requests for judicial notice are **DENIED AS MOOT**.

Malibu Media does not necessarily need to use the terms "piece," "sub-piece," or "block" in its more definite statement, but it should use terminology that a person familiar with the BitTorrent protocol would understand without the likelihood of confusion with some other relevant term of art. Additionally, this order only requires a more definite statement in Case

5

Nos. 15-4291 and 15-4441; however, Malibu Media would be wise to consider amending its complaints in other cases going forward to reflect the clarification called for by this order.

### 2. UNDUE BURDEN.

Rule 45(3)(iv) provides that a subpoena must be quashed if it "subjects a person to undue burden." Doe 144 contends that the subpoena that Malibu Media served on Comcast subjects him to undue burden, inasmuch as he is an eighty-year old citizen living on eight hundred dollars per month, who is renting rooms in his home to individuals. He argues that this litigation has caused significant stress and that compliance with the subpoena invades his privacy.

Doe 144 lacks standing to challenge the subpoena based on undue burden. *Mt. Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012) ("[T]he 'undue burden' language is limited to harms inflicted by complying with the subpoena . . . ."). Accordingly, he may not quash the subpoena on Comcast on that basis.

### 3. DENIAL OF LIABILITY.

Both Doe 144 and Doe 240 broadly deny that they performed the alleged infringing acts. They argue that some third party, such as a tenant or an intruder may have used their Internet connections to copy Malibu Media's videos with the BitTorrent protocol. These arguments may have merit, but defendants' bare denials of liability cannot form the basis for quashing the subpoenas. *See* Rule 45(3), (4). Malibu Media has pled that it received at least one piece of each allegedly infringed work from the defendants, and it has pled that defendants' conduct occurred persistently, rather than in an isolated event. At the Rule 12 stage, the complaint has pled facts that plausibly demonstrate that the subscribers identified in the complaints committed the alleged infringement. Defendants' denials of liability should be raised on a sworn record once they have been served and appeared. Accordingly, Doe 144's and Doe 240's motions to quash or to dismiss are **DENIED**.

To be clear, this order only holds that Malibu Media has met the low standard of plausibility. Evidence that a defendant copied or distributed only a single piece of a video is weak evidence that the defendant copied the whole file (especially given the complexity of the

6

circumstances of Malibu Media's collection of that evidence). Registration of a video with the Copyright Office is only prima facie evidence of the copyrightability of that work. Moreover, the mere fact that an individual is the subscriber for a particular IP address is weak evidence that he, rather than a third party, actually committed the alleged infringement even if the alleged infringement occurred habitually. Malibu Media faces significant hurdles when it comes to proving its case on the merits, but it has met its burden at the Rule 12 stage.

## CONCLUSION

For the reasons stated above, defendants' motions to quash, for protective orders, or to dismiss are **DENIED**. Doe 252's and Doe 126's motions for more definite statements are, to the extent stated, **GRANTED**. Malibu Media shall file a more definite statement consistent with this order by **MARCH 24**. The Clerk shall please **SERVE** this order on any defendants who have not formally appeared in the action yet. Malibu Media shall **SERVE** this order on Comcast, and Comcast shall comply with the subpoenas served in each of these actions by **MARCH 28**. Malibu Media shall have **SIX WEEKS** from the date on which it receives Comcast's response to serve the defendants.

Several of the defendants in the above-captioned actions and many of the other actions filed by Malibu Media are proceeding pro se. Pro se defendants should review the resources available to pro se litigants in this district, which can be found at http://www.cand.uscourts.gov/helpcentersf. Pro se defendants should particularly consider setting up an appointment with the Federal Pro Bono project, which can be reached by phone at 415-782-8982 or email at federalprobonoproject@sfbar.org.

**IT IS SO ORDERED.**

Dated: March 10, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE